# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAYTON MARTICE WADDY**, | : | CIVIL ACTION NO. 1:09-CV-1145 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **JERRY C. MARTINEZ**, | : | |
| Respondent | : | |

## **MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Dayton Martice Waddy ("Waddy"), an inmate currently incarcerated at the Low Security Correctional Institution at Allenwood, White Deer, Pennsylvania. Waddy contends that respondent violated his due process rights in the context of a disciplinary hearing. (Doc. 1, at 1.) The petition is ripe for disposition and, for the reasons that follow, the matter will be remanded to the Federal Bureau of Prisons ("BOP") for a new hearing.

**I.    Background**

On April 3, 2008, while incarcerated at the Federal Corrections Institution in Cumberland, Maryland, Waddy received an incident report charging him with "Possession, Manufacture, or Introduction of a Hazardous Tool" in violation of Code 108 and "Possession of Anything Not Authorized" in violation of Code 305, based on the following report generated by R. Kline, Senior Officer:

> On 4-03-2008 at approximately 8:10 pm I received a radio call from Powerhouse staff Reitmeyer. He observed 1 inmate coming from the access road. I began checking the area adjacent to camp visiting. Behind Camp Food Service I located Inmate Waddy #39065-083. He was laying in the driveway leading to camp recreation. He was attempting to hide by covering his head and face. I ordered Waddy to submit to hand restraints. He complied after several requests. Senior Officer Dontizen arrived in a van and transported Waddy to FCI. After Senior Officer Dontizen departed myself and Reitmeyer did a brief search of area. Approximately 30 yards from where Waddy was located a brown in color duffel bag was located. It contained 2 cell phones, 1 cell phone charger[,] 10 bags of tobacco and 11 homemade DVD movies.

(Doc. 1-4, at 2.)

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. The investigation must be conducted promptly unless circumstances beyond the control of the investigator intervene. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Because Waddy was charged with an

offense in the high severity category, the matter was referred for a disciplinary hearing.

The hearing commenced on April 16, 2008. (Doc. 1-5, at 2.) Waddy appeared with his staff representative, Ms. Hart. According to the DHO, "Ms. Hart inquired how Waddy could be charged with contraband that was not in his possession but was only in the proximity of where he was apprehended by staff. At the conclusion of the hearing Ms. Hart stated that Waddy had received a fair hearing and that appropriate sanctions were imposed." (Id.)

During his inmate statement, "Waddy acknowledged receiving a copy of the incident report and stated he understood his rights before the DHO. Waddy stated he was talking to a white guy at the recreation gate about a basketball game that was played earlier. Waddy stated he was bouncing a handball against the wall while he was talking with this other inmate. He then stated the ball bounced past him and he went to get it. Waddy stated he was unable to pick up the handball because he was stopped by the officer. . . . Waddy also stated it was not possible for the officer from the powerhouse to have seen him at the recreation gate. Waddy also stated the staff never asked him about a bag or where the bag was." (Id. at 2-3.)

The DHO found Waddy committed the prohibited acts. In doing so, he relied on the reporting officer's statements contained in the incident report. (Doc. 1-5, at 3.) Waddy's description of the incident was considered and it was found to "lack credibility based on the distance from the recreation gate to the area where staff reportedly found Waddy laying on the driveway to recreation." (Id. at 4.) The

DHO also considered Waddy's contention that the officer could not have seen him from the powerhouse. The DHO commented that the report did not say the officer was at the powerhouse, only that he was assigned to the powerhouse. (Id.) The DHO then concluded that "[t]here are clear lines of sight from various areas where the Powerhouse Foreman works where he would certainly be able to see inmates at the recreation gate or coming from the access road." (Id.) Therefore, he gave little weight to this challenge. Lastly, Waddy's claim that he was not responsible for the bag because it was not in his possession, only found nearby, was considered and rejected. The DHO found that "there is sufficient connection between the location where the bag of contraband was found and where Waddy was apprehended sufficient establishes a nexus connecting Waddy and the contraband." (Id.) The DHO summarized as follows:

> Therefore, the DHO finds, on the greater weight of the evidence given to the reporting officer's description of the incident, the location of the contraband in relation to where Waddy was apprehended and the lack of any justifiable reason for Waddy to be in this area at this time of day, that Waddy committed the prohibited acts of the possession, manufacture, or introduction of a hazardous tool and the possession anything not authorized.

(Doc. 1-5, at 4.) He was sanctioned with a loss of fifty-three days of Good Conduct Time, forfeiture of sixty days non-vested Good Conduct Time, seventy-five days of disciplinary segregation, ninety days telephone restriction and social visiting restriction and a disciplinary transfer.

4

**II.     Discussion**

Waddy alleges that his due process rights were violated in the context of the disciplinary hearing which resulted in a loss of good conduct time. Such a claim is properly the subject of this habeas petition because it directly impacts the duration of his confinement.

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). Consequently, when a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive the following due process protections:  1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate, 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564 (1974).

Waddy contends that the incident report was insufficient to afford him notice of the charges as required by Wolff.[1] In Wolff, the United States Supreme Court explained the purpose of prior notice is two-fold: 1) to give the defending party an opportunity to marshal the facts in his defense; and 2) to clarify the charges. Wolff, 418 U.S. at 564. Here, the incident report provided to Waddy more than twenty-four hours before his hearing contained all the necessary facts to defend a charge for the possession of contraband. He required no more notice to defend against either of the charges lodged against him.

When due process requirements of Wolff are met, as is the case here, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some

---

[1] This is the only ground on which he challenges the Wolff due process protections.

evidentiary support. Id. at 457; see also 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

Waddy frames his argument as follows:

The Petitioner states that the basis for the incident report and the DHO findings lack reliability because the writer of the incident report never stated that he witnessed the Petitioner in possession of this alleged duffel bag containing 2 cell phones, 1 cell phone charger, 10 bags of tobacco and 11 homemade DVD movies. There was no eyewitness of anyone ever stating that the Petitioner ever possessed anything.

Because the writer of the incident reported that something was found "approximately 30 yards from where Waddy was", to infer that the item in question that was found is Petitioner's is absurd, since this is an open area available to any inmate or staff member. Therefore, the DHO did not meet the evidentiary standard required to find that the Petitioner committed the prohibited act.

(Doc. 1, at 7-11; see also Doc. 6, at 2-3) (emphasis in original). In essence, Waddy challenges application of the "constructive possession" doctrine to his case.[2] "The application of the constructive possession doctrine has been upheld in the context of prison disciplinary proceedings that concerned the discovery of contraband in a shared room, for which no resident acknowledged responsibility. See Tweedy v. Vannatta, 101 F. App'x 158 (7th Cir. 2004) (marijuana found in cup in common area in two person cell); Hamilton [ v. O'Leary, 976 F.2d [341] at 346 [(7th Cir. 1992)] (six weapons were found in air vent of cell shared by four inmates); Okocci [v. Klein,

---

[2]Support for this doctrine is found in the prison policy which establishes that inmates are responsible for any contraband found in their cell. See Program Statement 52700.007, *Inmate Discipline and Special Housing Units* (January 9, 2003).

270 F.Supp.2d [603,] at 613 [(E.D.Pa. 2003)], (weapon found in a two-person cell); White v. Kane, 860 F. Supp. [1075,] at 1079 (E.D. Pa. 1994) (applicable where contraband was found in cell assigned to one inmate, but which was accessible to other inmates in the prison)." Briggs v. Marberry, No. 06-244, 2008 WL 554927, at *8 (W.D. Pa. Feb. 28, 2008). "In the absence of direct evidence indicating an inmate's guilt of possession, the 'some evidence' standard may be satisfied where a small number of inmates are potentially guilty of the offense charged." Santiago v. Nash, 224 F. App'x 175, 177 (3d Cir. 2007) (unpublished opinion) citing White v. Kane, 860 F. Supp. 1075, 1079 n. 5 (E.D. Pa. 1994), *aff'd* 52 F.3d 319 (3d Cir. 1995). Several courts have adopted a probability analysis based on the number of prisoners having access to the area in which contraband is discovered. Briggs, No. 06-244, 2008 WL 554927, at *8 (W.D. Pa. Feb. 28, 2008) (collecting cases). The United States Court of Appeals for the Third Circuit, however, has not articulated a limit on the constructive possession doctrine.

In considering the evidence, as recited in the "Background" section, *supra*, the court finds that there is insufficient evidence to support the DHO's decision. In response to Waddy's contention that he was not responsible for the bag because it was not in his possession, the DHO simply found that there was a "sufficient connection between the location where the bag of contraband was found and where Waddy was apprehended sufficient establishes a nexus connecting Waddy and the contraband." (Doc. 1-5, at 4.) This statement, without evidentiary support, falls short of the "some evidence" standard. For instance, it is unclear who had access

8

to the area where Waddy was found, whether he was authorized to be in the area and, if so, whether he was responsible for keeping the area contraband free. In addition, there is not a clear picture of the area where Waddy was found in relation to the contraband or any indication that Waddy had been in the immediate vicinity of the contraband sufficient to establish a "nexus." Consequently, the petition will be remanded to the BOP for a new hearing.

### III. Conclusion

The petition for writ of habeas corpus will be partially granted to the extent that the matter will be remanded to the BOP for a new DHO hearing. The petition will be denied in all other respects.

An appropriate order will issue.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: December 29, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAYTON MARTICE WADDY,** | : | **CIVIL ACTION NO. 1:09-CV-1145** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **JERRY C. MARTINEZ,** | : | |
| Respondent | : | |

## **ORDER**

AND NOW, this 29th day of December, 2009, in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is PARTIALLY GRANTED to the extent that the matter is REMANDED to the appropriate Federal Bureau of Prisons Disciplinary Hearing Officer for a new hearing. The petition is DENIED in all other respects.

2. The Clerk of Court is directed to CLOSE this case.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge